IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| SANDRA ACOSTA DE MATA, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:26-cv-1827-AT |
| KRISTEN SULLIVAN, Director, | : | |
| Atlanta ICE Field Office; | : | |
| MARKWAYNE MULLIN, Secretary, | : | |
| Department of Homeland Security; | : | |
| TODD LYONS, Acting Director, | : | |
| Immigration and Customs | : | |
| Enforcement; TODD BLANCHE, | : | |
| Acting Attorney General, | : | |
| | : | |
| Respondents. | : | |

**<u>ORDER</u>**

This case comes before the Court on Petitioner Sandra Acosta de Mata's Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ("habeas petition") (Doc. 1) and Motion for Temporary Restraining Order [Doc. 2]. In the habeas petition, Petitioner asserts that she faces imminent detention by U.S. Immigration and Customs Enforcement ("ICE") authorities. (Doc. 1 ¶ 1). Petitioner alleges she has been present in the United States since 2003, when she entered lawfully and was inspected and admitted as a B-2 visitor at Atlanta, Georgia. (*Id.* ¶ 30). In 2013, she was charged with and convicted of identity fraud and forgery, but those convictions were later reopened and

vacated. (*Id.*). Petitioner states she then pled guilty to the misdemeanor offense of possession of a false identification document under O.C.G.A. § 16-9-4(b)(1). (*Id.*). Petitioner was subsequently ordered removed in 2013 by an immigration judge, and that final removal order remains in place. (*Id.* ¶¶ 2, 30). However, Petitioner has been subject to an Order of Supervision ("OSUP") since that time, authorizing her release from detention and allowing her to legally reside and work in the United States while under ICE supervision.

While under the Order of Supervision, Petitioner applied for a U visa because she was the victim of a violent crime, and law enforcement signed a certification that she was helpful to their investigation. (*Id.* ¶¶ 2, 30). On August 11, 2023, U.S. Citizenship and Immigration Services ("USCIS") granted Petitioner deferred action on the basis of its finding that her U visa application was bona fide.[1] (*See* Doc. 1-1). USCIS also granted Petitioner employment authorization and stated that Petitioner's "employment authorization document and grant of deferred action are valid for a period of four years." (*Id.* at 1).

In addition to having been granted deferred action by USCIS, Petitioner is awaiting a decision on an I-130 petition (i.e., a green card application) filed on her behalf by her 21-year old son, who is a U.S. citizen. (Doc. 1 ¶ 30, 31). If Petitioner obtains U visa status, she may seek to adjust her status after four years to

---

[1] Petitioner has not been granted U-1 nonimmigrant status because the cap for U visas had been reached for the fiscal year at the time she was granted deferred action in 2023. (Doc. 1-1 at 1). Petitioner reports that there is a years-long wait and a queue of over 200,000 U visa applications awaiting decision because there is a statutory cap on U visas of only 10,000 per year. (Doc. 1 at 2 n.1).

permanent resident status pursuant to 8 U.S.C. § 1182(d)(14), § 1101(a)(15)(U), § 1184(p)(6), and § 1255(m). In the alternative, if Petitioner is able to reopen her removal proceedings, she would be eligible as the parent of a child over 21 years old to adjust her status to permanent resident under 8 U.S.C. § 1255(i) since she also made a lawful entry. (*Id.* ¶ 31). Considering the length of time she has been in the country, her ties to the country through her 21-year-old U.S. citizen son who is willing to sponsor her,[2] and her bona fide deferred action letter, Petitioner argues she should be treated as a lower priority for deportation under Respondents' own regulations. (*Id.* ¶ 32).

Petitioner alleges she has been compliant with the conditions of her release under the Order of Supervision for the past 13 years, routinely attending check-in meetings with ICE. (*Id.* ¶¶ 7, 56). At her last meeting with ICE authorities in January 2026, Petitioner contends that ICE held her for four hours, and they began the process of arresting her and taking her into custody. (*Id.* ¶ 4). After her attorney called and intervened, ICE authorities decided that Petitioner would be released, but "they said she would see the supervisor at her next check-in, and they would handle her case at that time." (*Id.*). Petitioner thus anticipates that it is "highly likely that she will be arrested" at her next ICE check-in on April 8, 2026. (*Id.* ¶ 5).

Based on these allegations, Petitioner brings claims under the Due Process Clause of the Fifth Amendment, the Administrative Procedure Act ("APA"), and

---

[2] Petitioner also has a 28-year-old non-citizen son who is a recipient of Deferred Action for Childhood Arrivals ("DACA").

the *Accardi* Doctrine. (*Id.* ¶¶ 52-77, 80-82). Petitioner also brings an *ultra vires* habeas claim on the basis that Respondents would be acting beyond their statutory powers if they detain her and revoke her Order of Supervision without first finding her to be a flight risk or a danger to the community. (*Id.* ¶¶ 78-79). Petitioner seeks habeas relief under 28 U.S.C. § 2241, declaratory and injunctive relief[3], attorneys' fees and costs, and a waiver of security (or setting of a nominal security) under Fed. R. Civ. P. 65(c). (*Id.* at 30-31).

In the immediate short term, Petitioner separately moves the Court for an emergency temporary restraining order directing Respondents not to transfer her or her case outside the jurisdiction of the Northern District of Georgia pending resolution of this action. [Doc. 2]. Petitioner explains that she has an appointment with ICE on April 8, 2026, at which time she is likely to be arrested. [*Id.*]; (*see also* Doc. 1 ¶¶ 4-5). Thus, Petitioner also asks that the Court issue an order to show cause as to why a preliminary injunction should not issue and require Respondents to file a written response within three days. (*Id.* at 30); [Doc. 2].

Respondents in this case have not yet received service of the habeas petition or the Motion for Temporary Restraining Order.  The Court may issue a temporary

---

[3] Specifically, Petitioner asks the Court to (1) declare that Respondents cannot revoke her Order of Supervision without following proper procedures under the governing statutory and regulatory framework; (2) declare that Petitioner cannot be arrested by ICE because she has deferred action status as the victim of a crime and has done nothing to violate that status; (3) declare that Respondents' actions and Petitioner's imminent detention violate the Due Process Clause of the Fifth Amendment, the APA, and the *Accardi* Doctrine; and (4) enjoin Respondents from detaining Petitioner in the future absent changed circumstances such as new criminal conduct.

4

restraining order[4] without notice to the adverse party only if (1) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. Fed. R. Civ. P. 65(b)(1).

Additionally, to meet her burden of showing she is entitled to a temporary restraining order ("TRO"), Petitioner must demonstrate (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that granting the relief would not be adverse to the public interest. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005).

---

4 At this stage, the Court finds it has jurisdiction over these proceedings. As a general rule, "[a] district court may entertain a habeas corpus petition only if a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Whitfield v. U.S. Sec'y of State*, 853 F. App'x 327, 329 (11th Cir. 2021) (quoting 28 U.S.C. §§ 2241(c)(3), 2254(a)). Petitioner is not currently in ICE custody. However, "the 'in custody' requirement should be construed 'very liberally.'" *Clements v. Florida*, 59 F.4th 1204, 1213 (11th Cir. 2023). This is because the "custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345, 351–2 (1973) (holding petitioner released on recognizance is "in custody" for purposes of habeas petition because "[h]is incarceration [was] not [merely] a speculative possibility" and the government "retain[ed] the determination and the power to seize him"). The Eleventh Circuit has specifically held that "non-citizens released on supervision while awaiting a final decision in their immigration proceedings are deemed to be 'in custody' for purposes of habeas corpus." *Clements*, 59 F.4th at 1214 (citing *United States ex rel. Marcello v. Dist. Dir. of INS, New Orleans*, 634 F.2d 964, 971 & n.11 (5th Cir. 1981)). And in any event, even if the Court ultimately finds that it lacks jurisdiction after briefing and oral argument, the Court "always has jurisdiction to determine its own jurisdiction." *Brownback v. King*, 592 U.S. 209, 218-19 (2021) (quotation omitted).

After considering the habeas petition and the attached documentation in support, the Court finds that at this early stage in the case, Petitioner has satisfied the four prerequisites for a TRO. Further, Petitioner has established that immediate and irreparable injury will result to Petitioner before Respondents can be heard in opposition to the petition, and she has given reasons why notice should not be required here given the short time before her next appointment with ICE on April 8.

Accordingly, it is hereby **ORDERED** that Petitioner's Motion for Temporary Restraining Order [Doc. 2] is **GRANTED** as follows:

(1)    Petitioner shall cause service of the habeas petition (Doc. 1), the Motion for TRO [Doc. 2], and this Order to be made on Respondents as soon as practicable and shall immediately file proof of such service, or waiver of service, on the case docket.

(2)    Respondents are **ORDERED** to show cause why the habeas petition (Doc. 1) should not be granted and why a preliminary injunction should not issue. Respondents must respond to the habeas petition within **three days** after service is perfected or waived.

(3)    Petitioner shall file any reply in support of her habeas petition no later than **two days** after the filing of any response briefs.

(4)    Respondents are **RESTRAINED** from detaining Petitioner until the pending habeas petition before this Court can be heard and decided on the merits. As part of this restraint, Respondents may not impose

further conditions of release on Petitioner other than the conditions already required by the existing Order of Supervision.

(5)    Respondents are further **RESTRAINED** from removing Petitioner from the Northern District of Georgia until further order from this Court.

(6)    The Court shall hold a hearing on the merits of the habeas petition and request for permanent injunctive relief on **April 15, 2026** at **2:00 p.m.** in Courtroom 2308. Counsel for the parties may contact the Courtroom Deputy Clerk at Keri_Gardner@gand.uscourts.gov if that hearing time and date are not feasible.

**IT IS SO ORDERED** this 6th day of April, 2026.

_____

**Honorable Amy Totenberg**
**United States District Judge**